## PIERRE v. LOUISIANA.

No. 142.   Argued February 3, 6, 1939.—Decided February 27, 1939.

*Mr. Maurice R. Woulfe* for petitioner.

*Mr. John E. Fleury,* with whom *Messrs. Gaston L. Porterie,* Attorney General of Louisiana, *James O'Connor,* Assistant Attorney General, and *Ernest M. Conzelmann* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Indicted for murder, petitioner, a member of the negro race, was convicted and sentenced to death in a state court of the Parish of St. John the Baptist, Louisiana.

The Louisiana Supreme Court affirmed.[1]  His petition
for certiorari to review the Louisiana Supreme Court's
judgment rested upon the grave claim—earnestly, but
unsuccessfully urged in both state courts—that because
of his race he had not been accorded the equal protection
of the laws guaranteed to all races in all the States by
the Fourteenth Amendment to the Federal Constitution.
For this reason, we granted certiorari.[2]

The indictment against petitioner was returned Jan-
uary 18, 1937.  He made timely motion to quash the
indictment and the general venire from which had been
drawn both the Grand Jury that returned the indictment
and the Petit Jury for the week of his trial.  His motion
also prayed that the Grand Jury Panel and the Petit Jury
Panel be quashed.  This sworn motion alleged that pe-
titioner was a negro and had been indicted for murder of
a white man; that at least one-third of the population of
the Parish from which the Grand and Petit Juries were
drawn were members of the negro race, but the general
venire had contained no names of negroes when the Grand
Jury that indicted petitioner was drawn; that the state
officers charged by law with the duty of providing names
for the general venire had "deliberately excluded there-
from the names of any negroes qualified to serve as Grand
or Petit Jurors, . . ." and had "systematically, unlawfully
and unconstitutionally excluded negroes from the Grand
or Petit Jury in said Parish" for at least twenty years
"solely and only because of their race and color"; and
that petitioner had thus been denied the equal protection
of the laws guaranteed him by the Constitution of Louisi-
ana and the Fourteenth Amendment to the Constitution
of the United States.

No pleadings denying these allegations appear in the
record, and the State offered no witnesses on the mo-

---

[1] 189 La. 764; 180 So. 630.
[2] 305 U. S. 586.

tion. Petitioner offered twelve witnesses who were questioned by his counsel, the State's Assistant District Attorney, and the court. On the basis of this evidence, the trial judge sustained the motion to quash the Petit Jury Panel and venire and subsequently ordered the box containing the general venire (from which both Grand and Petit Juries had been drawn) emptied, purged and refilled. This was done; a new Petit Jury Panel composed of both whites and negroes was subsequently drawn from the refilled Jury box and from this Panel a Petit Jury was selected which tried and convicted petitioner. Although the Grand Jury that indicted petitioner and the quashed Petit Jury Panel had been selected from the same original general venire [3] the trial judge overruled that part of petitioner's motion seeking to quash the Grand Jury Panel and the indictment.

*First.* The reason assigned by the trial judge for refusing to quash the Grand Jury Panel and indictment was that "the Constitutional rights of the defendant [are] . . . not affected by reason of the fact that persons of the Colored or African race are not placed on the Grand Jury, because . . . the mere presentment of an indictment is not evidence of guilt . . . it simply informs the Court

---

[3] Under Louisiana practice the District Judge orders the Jury Commission to select three hundred qualified jurors in a given Parish, who compose the general venire list, to be kept complete and supplemented from time to time. These names are placed in the "General Venire Box." From the general venire list, the Commission selects twenty persons qualified as grand jurors, to serve six months, who compose the "List of Grand Jurors." The Judge selects a foreman from the "List of Grand Jurors" and the sheriff draws eleven more who, with the foreman, constitute the Grand Jury Panel. After selection of the "List of Grand Jurors" the Commission draws thirty names from the "General Venire Box" to serve as Petit Jurors, who are designated a "List of Jurors" and this "List of Jurors" is kept in the "Jury Box." Louisiana Code of Criminal Procedure (Dart, 1932) Title XVIII, c. 2.

of a commission of a crime and brings the accused before the court for prosecution." But the bill of rights of the Louisiana Constitution (Dart, 1932, Art. 1, § 9) provides that "no person shall be held to answer for capital crime unless on a presentment or indictment by a grand jury, . . ." And the State concedes here, as the Supreme Court of Louisiana pointed out in its opinion in this case, that ". . . . it is specially provided in the [Louisiana] law prescribing the method of drawing grand and petit jurors to serve in both civil and criminal cases that 'there shall be no distinction made on account of race, color or previous condition,' " and "If . . . [qualified] members of the negro . . . race . . . have been systematically excluded from . . . service in the parish of St. John, . . . solely because of their race or color, the indictment should have been quashed . . ." Exclusion from Grand or Petit Jury service on account of race is forbidden by the Fourteenth Amendment.[4] In addition to the safeguards of the Fourteenth Amendment, Congress has provided that "No citizen possessing all other qualifications . . . shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color or previous condition of servitude; . . ."[5] Petitioner does not here contend that Louisiana laws required an unconstitutional exclusion of negroes from the Grand Jury which indicted him. His evidence was offered to show that Louisiana—acting through its administrative officers—had deliberately and systematically excluded negroes from jury service because of race, in violation of the laws and Constitutions of Louisiana and the United States.[6]

---

[4] *Strauder* v. *West Virginia*, 100 U. S. 303, 308, 309; *Carter* v. *Texas*, 177 U. S. 442, 447; *Martin* v. *Texas*, 200 U. S. 316, 319.

[5] U. S. C. Title 8, § 44.

[6] Cf., *Norris* v. *Alabama*, 294 U. S. 587, 589; *Neal* v. *Delaware*, 103 U. S. 370, 397; *Carter* v. *Texas, supra*, at 447; *Hale* v. *Kentucky*, 303 U. S. 613, 616.

If petitioner's evidence of such systematic exclusion of negroes from the general venire was sufficient to support the trial court's action in quashing the Petit Jury drawn from that general venire, it necessarily follows that the indictment returned by a Grand Jury, selected from the same general venire, should also have been quashed.

*Second.* But the State insists, and the Louisiana Supreme Court held (the Chief Justice dissenting), that this evidence failed to establish that members of the negro race were excluded from the Grand Jury venire on account of race, and that the trial court's finding of discrimination was erroneous. Our decision and judgment must therefore turn upon these disputed questions of fact. In our consideration of the facts the conclusions reached by the Supreme Court of Louisiana are entitled to great respect. Yet, when a claim is properly asserted—as in this case—that a citizen whose life is at stake has been denied the equal protection of his country's laws on account of his race, it becomes our solemn duty to make independent inquiry and determination of the disputed facts [7]—for equal protection to all is the basic principle upon which justice under law rests. Indictment by Grand Jury and trial by jury cease to harmonize with our traditional concepts of justice at the very moment particular groups, classes or races—otherwise qualified to serve as jurors in a community—are excluded as such from jury service.[8] The Fourteenth Amendment intrusts those who because of race are denied equal protection of the laws in a State first "to the revisory power of the higher courts of the State, and ultimately to the review of this court." [9]

Petitioner's witnesses on the motion were the Clerk of the court—ex-officio a member of the Jury Commission;

---

[7] *Norris* v. *Alabama,* 294 U. S. 587, 590.

[8] Cf. *Strauder* v. *West Virginia, supra,* 308, 309.

[9] *Virginia* v. *Rives,* 100 U. S. 313, 319.

the Sheriff of the Parish; the Superintendent of Schools who had served the Parish for eleven years; and other residents of the Parish; both white and colored. The testimony of petitioner's witnesses (the State offered no witnesses) showed that from 1896 to 1936 no negro had served on the Grand or Petit Juries in the Parish; that a venire of three hundred in December, 1936, contained the names of three negroes, one of whom was then dead, one of whom (D. N. Dinbaut) was listed on the venire as F. N. Dinfant; the third—called for Petit Jury service in January, 1937—was the only negro who had ever been called for jury service within the memory of the Clerk of the court, the Sheriff, or any other witnesses who testified; and that there were many negro citizens of the Parish qualified under the laws of Louisiana to serve as Grand or Petit Jurors. According to the testimony, negroes constituted 25 to 50 per cent of a total Parish population of twelve to fifteen thousand. The report of the United States Department of Commerce, Bureau of the Census, for 1930, shows that the total Parish population was fourteen thousand and seventy-eight, 49.7 per cent native white, and 49.3 per cent negro. In a total negro population (ten years old and over) of five thousand two hundred and ninety, 29.9 per cent were classified by the census as illiterate.

The Louisiana Supreme Court found—contrary to the trial judge—that negroes had not been excluded from jury service on account of race, but that their exclusion was the result of a *bona fide* compliance by the Jury Commission with state laws prescribing jury qualifications. With this conclusion we cannot agree. Louisiana law requires the Commissioners to select names for the general venire from persons qualified to serve without distinction as to race or color. In order to be qualified a person must be:

(a) A citizen of the State, over twenty-one years of age with two years' residence in the Parish,

(b) Able to read and write the English language,

(c) Not charged with any offense or convicted of a felony,

(d) Of well known good character and standing in the community.[10]

The fact that approximately one-half of the Parish's population were negroes demonstrates that there could have been no lack of colored residents over twenty-one years of age.

It appears from the 1930 census that 70 per cent of the negro population of the Parish was literate, and the County Superintendent of Schools testified that fully two thousand five hundred (83 per cent), of the Parish's negro population estimated by him at only three thousand, were able to read and write. Petitioner's evidence established beyond question that the majority of the negro population could read and write, and, in this respect, were eligible under the statute for selection as jurymen.

There is no evidence on which even an inference can be based that any appreciable number of the otherwise qualified negroes in the Parish were disqualified for selection because of bad character or criminal records.

We conclude that the exclusion of negroes from jury service was not due to their failure to possess the statutory qualifications.

The general venire box for the Parish in which petitioner was tried was required [11]—under Louisiana law— to contain a list of three hundred names selected by Jury Commissioners appointed by the District Judge, and this list had to be supplemented from time to time so as to

---

[10] Louisiana Code of Criminal Procedure, *supra,* Title XVIII, c. 1.

[11] See note 3, *supra.*

maintain the required three hundred names. Although Petit Jurors are drawn from the general venire box after the names have been well mixed,[12] the law provides [13] that "the commission shall *select* . . . [from the general venire list] the names of twenty citizens, possessing the qualifications of grand jurors, . . ." [Italics supplied.] The twenty names out of which the challenged Grand Jury of twelve was drawn, actually were the first twenty names on a new list of fifty names supplied—on the day the Grand Jury List was selected—by the Jury Commission as a "supplement" to the general venire of three hundred. Thus, if colored citizens had been named on the general venire, they apparently were not considered, because the Commission went no further than the first twenty names on the supplemental list which itself contained no names of negroes. Furthermore, the uncontradicted evidence on the motion to quash showed that no negro had ever been *selected* for Grand Jury service in the Parish within the memory of any of the witnesses who testified on that point.

The testimony introduced by petitioner on his motion to quash created a strong *prima facie* showing that negroes had been systematically excluded—because of race—from the Grand Jury and the venire from which it was selected. Such an exclusion is a denial of equal protection of the laws, contrary to the Federal Constitution—the supreme law of the land.[14] "The fact that the testimony . . . was not challenged by evidence appropriately direct, cannot be brushed aside." [15] Had there been evidence obtainable to contradict and disprove the testimony offered

---

[12] Louisiana Code of Criminal Procedure, *supra*, Title XVIII, c. 2, Art. 181.

[13] *Id.*, Art. 180.

[14] *Neal* v. *Delaware*, *supra*, 397; *Norris* v. *Alabama*, *supra*, 591; *Hale* v. *Kentucky*, *supra*, 616.

[15] *Norris* v. *Alabama*, *supra*, 594, 595.

by petitioner, it cannot be assumed that the State would have refrained from introducing it. The Jury Commissioners, appointed by the District Judge, were not produced as witnesses by the State. The trial judge, who had appointed the Commission, listening to the evidence and aided by a familiarity with conditions in the Parish of many years' standing, as judge, prosecutor and practicing attorney, concluded that negroes had been excluded from Jury service because of their race, and ordered the venire quashed and the box purged and refilled. Our examination of the evidence convinces us that the bill of exceptions which he signed correctly stated that petitioner "did prove at the trial of said motion to Quash that negroes as persons of color had been purposely excluded from the Grand Jury Venire and Panel which returned said indictment against . . . [petitioner] on account of their color and race, . . ."

Principles which forbid discrimination in the selection of Petit Juries also govern the selection of Grand Juries. "It is a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color." [16] This record requires the holding that the court below was in error both in affirming the conviction of petitioner and in failing to hold that the indictment against him should have been quashed. The cause is reversed and remanded to the Supreme Court of Louisiana.

*Reversed.*

---

[16] *Virginia* v. *Rives, supra,* 322–3.