## Commonwealth ex rel. v. Thomas et al.

*Goethe Faust*, for relator.

*C. Ward Eicher*, for respondents.

McWHERTER, J., April 17, 1944.—This matter comes before the court on the application of Ralph Johnson for discharge on a writ of habeas corpus, following the issue of a warrant for his arrest by the Governor of Pennsylvania, pursuant to a request for Johnson's extradition by the State of Alabama, to answer to a charge of assault and battery with intent to kill.

This is the second time that defendant has been before this court with relation to this charge. He had previously been arrested by the Chief of Police of the Borough of West Newton, Westmoreland County, Pa., who had received a request from the Sheriff of Talladega County, Ala., for such arrest and had also received a copy of a warrant issued by an Alabama justice of the peace. The prisoner was discharged. The Sheriff of Talladega County, Ala., thereupon, through the proper channels, secured from the Governor of this Commonwealth the warrant of extradition, the prisoner was presented to the court by the sheriff of this county pursuant to the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS §191, and these proceedings followed.

At the preceding habeas corpus hearing the Sheriff of Talladega County, Ala., was present in court. In this proceeding neither the sheriff nor any other person representing the prosecution from the State of Alabama appeared in court. Defendant appeared with counsel and called two witnesses who are residents of the community in which he lived in Alabama.

From the uncontradicted testimony we ascertained the following:

On December 6, 1943, defendant, a Negro, was attacked by three white men and severely beaten. He was married and lived with his wife and children in a building, formerly used as a brooder house, owned by one Catt Owens. The affray in which defendant, Johnson, was beaten occurred two or three miles away from his home. He returned to his home where he had a shotgun. His landlord, Catt Owens, with two other men, appeared at Johnson's home armed, entered his home, and demanded that he surrender the shotgun, which he refused to do. They, then, under the ruse that they wanted to have Johnson's wounds treated, tried to induce him to accompany them, which he also refused to do. Johnson was corroborated by two witnesses as to what occurred at his home.

One witness, J. D. Burks, a colored man, testified for Johnson. He said that Owens gave Johnson 10 minutes to leave the community. Johnson left without an opportunity to procure his personal belongings and started north. Shortly after he left his home a posse of white men was organized and seven cars of armed men proceeded to try to apprehend him. One witness, Mrs. Willie Patterson, testified that it was common rumor in the community that Johnson would be killed if he returned to his home State of Alabama, and that as late as Thursday, April 6, 1944, five days before this habeas corpus hearing, Catt Owens had told her that Johnson had better not return.

Testimony also was submitted that in Alabama Negroes were not permitted to sit on either the grand jury or petit jury in criminal cases.

Our decisions have held that in Pennsylvania the judge granting the writ of habeas corpus may not inquire into the guilt or innocence of the accused, as that is a matter to be passed on by the court of the demanding State in which he is to be tried. However, the Uniform Criminal Extradition Act of 1941 does not limit the investigation and hearing on the writ of habeas cor-

pus to the question of identification, and the Act of July 1, 1937, P. L. 2664, provides that the judge granting the writ of habeas corpus "may inquire into the facts of the case". This has been construed to mean that the judge granting the writ may inquire into the facts averred as ground for the relator's claim that he should not be delivered over to the representatives of the demanding State.

In the relator's petition he avers as reasons for his discharge, inter alia, as follows: That he had fled from the State of Alabama because of the threats of mob violence and lynching made against him; that as a member of the colored race there is race prejudice against him in the State of Alabama; that he could not and would not receive a fair trial in the State of Alabama and that there exists a state of feeling against him in Talladega County, Ala., which is so high that he would be in grave danger of being lynched.

Article VI of the Bill of Rights of the Federal Constitution guarantees that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury. Traditionally in the English-speaking world trial by jury contemplates a trial of the accused by a jury of his peers. The adoption of the fourteenth and fifteenth amendments to the Constitution of the United States entirely changed the civil status of members of the Negro race. There is testimony submitted by the relator in this case by three witnesses that Negroes are not permitted to serve either on the grand jury or the petit jury in Talladega County, Ala. One of these witnesses, a man approximately 55 years of age, testified that no Negro had served on a jury in that county within his lifetime. This testimony justifies the conclusion that the exclusion of Negroes from jury service in Talladega County, Ala., was, and is, not due to their failure to possess the statutory qualifications for jury duty but is plainly on the ground that they are members of the colored race.

In Virginia v. Rives, 100 U. S. 313, it was said (p. 322) :

"It *is* a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color."

The same question was considered by the United States Supreme Court in the case of Pierre v. Louisiana, 306 U. S. 354. In that case a Negro was convicted of murder in the State of Louisiana. His counsel had moved to quash the indictment against him by reason of Negroes being excluded from the grand jury. This motion was denied. The court below did grant defendant's motion to discharge the venire for the same reason and a new jury was drawn from a venire including both Negroes and whites, and defendant was convicted. The Supreme Court of Louisiana upheld the court below in refusing to quash the indictment and its action was reversed by the Supreme Court of the United States on the ground that the exclusion of Negroes from the grand jury as well as the petit jury was a violation of the defendant's rights under the due process clause of the Federal Constitution.

We do not feel warranted in discharging the relator on the sole ground that Negroes are excluded from the grand jury and petit jury in Talladega County, Ala. These are matters that could be raised at the time of his trial by challenge of the array of grand jurors, by motion to quash any indictment, and by motion to discharge the petit jury. These are remedies to be pursued not here but in the demanding State.

We believe the relator should be discharged, however, by reason of the danger of his being lynched should he be returned to Alabama.

In the recent case of Commonwealth ex rel. v. Superintendent of County Prison, 152 Pa. Superior Ct. 167, President Judge Keller reviewed a number of the

decisions on this subject. The court upheld the decision of the Court of Quarter Sessions of Philadelphia County discharging from custody the relator, whose extradition was demanded by the State of Georgia on a charge of assault and battery with intent to kill. Referring to mob violence and the threat of mob violence, Judge Keller quoted from the decision in the case of Frank v. Mangum, etc., 237 U. S. 309, where the Supreme Court of the United States affirmed the order of the District Court of the United States for the Northern District of Georgia which had refused to issue a writ of habeas corpus based on the petition of the relator, who had been convicted of murder, in which he claimed he had not had a fair and impartial trial. Mr. Justice Holmes dissented, and Judge Keller quoted at length from the dissenting opinion. In addition Judge Keller recited the unfortunate aftermath of the Georgia case, setting forth that after his return to Georgia, the demanding State, he was lynched.

The undisputed testimony before us justifies the conclusion that were the relator required to be returned to Talladega County, Ala., he would be in grave danger of mob violence and possibly of losing his life at the hands of a lynching party. We feel justified under the circumstances in refusing his return and in granting the prayer of his petition for discharge.

### Decree

Now, April 17, 1944, it is ordered, adjudged, and decreed that the relator, Ralph Johnson, be and he is hereby temporarily discharged from custody, his present bond to be conditioned for his appearance in this court when and if wanted. It is further ordered that, if no exceptions are filed or appeal taken from this decree within the time provided by law, his discharge shall thereupon become permanent, and he and his surety shall be relieved from further liability and responsibility under the terms of his appearance bond heretofore filed in this case.