**Carl H. SMITH, II,**
**Petitioner, Appellant,**

v.

**Michael J. CUNNINGHAM, Warden,**
**New Hampshire State Prison,**
**Respondent, Appellee.**

No. 85–1608.

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1985.

Decided Jan. 23, 1986.

James E. Duggan, Concord, N.H., was on brief for appellant.

T. David Plourde, Asst. Atty. Gen., with whom Stephen E. Merrill, Atty. Gen., Concord, N.H., were on brief for appellee.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

In our recent *en banc* decision in *Barber v. Ponte*, 772 F.2d 982 (1st Cir.1985), we ruled that so-called "young adults," defined for the purpose of the issues raised therein as persons within the ages of 18 and 34 years, did not constitute a distinct class within the context of a jury composition challenge alleging violation of the Sixth and Fourteenth Amendments to the Constitution. *See Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida*, 430 U.S. 482, 494–495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977); *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975). We left open, however, the possibility of a different standard applying in the determination of what consti-

tutes a "class," where deliberate egregious conduct by the jury administering authorities necessitates intervention:

> That is not to say, however, that if a classification were *specifically* and *systematically excluded* from jury duty the same standard would be used as here, where defendant simply relies on a statistically [sic] disparity in the venires to challenge its constitutionality. If certain people are specifically and systematically excluded from jury duty, then the jury-administrating authority would have created its own group. Clearly, the state has no right to deliberately exclude specific classes or groups from juries without some very special reason.

*Barber v. Ponte, supra,* 772 F.2d at 999–1000, (emphasis in the original).

Although appellant has not specifically made such an argument, we assume from the general import of his brief, as well as from oral argument, that he seeks to slip within the exception mentioned above in *Barber.* This is in law the only marginally plausible avenue left to him, as he has failed to present any evidence relevant to establishing "young adults" as a distinct class, at any of the various procedural stages that have preceded this appeal. *See also Willis v. Zant,* 720 F.2d 1212, 1216 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984). However, even this narrow gap is closed.

Appellant Carl Smith was indicted for first degree murder on November 24, 1980 by a grand jury in Rockingham County, New Hampshire. Thereafter, he filed a motion to quash the indictment claiming that "young people" (ages 18 to 34) and blacks had been unconstitutionally excluded from the grand jury that indicted him.

He also filed a motion to join the record in *State v. Elbert,* Rockingham County Superior Court, Numbers S–440–80, S–441–80, for the purpose of showing statistical disparity in the selection of those two categories.[1] The motion to join the record was denied and thereafter, after trial, appellant was convicted of the charges and sentenced to imprisonment for 35 years to life at the New Hampshire State Prison. The conviction was affirmed on appeal to the Supreme Court of New Hampshire, that court refusing to reconsider its prior rulings regarding challenges to the jury selection process, including that in the *Elbert* case. *State v. Smith,* 123 N.H. 46, 455 A.2d 1041, 1045 (1983).

Appellant then filed a petition for a writ of habeas corpus in the Rockingham County Superior Court, foregoing his claim regarding the alleged underrepresentation of blacks, and concentrating his efforts on his contentions as to the systematic exclusion of "young persons." That court denied the writ, a decision which was summarily affirmed by the New Hampshire Supreme Court.

Appellant then proceeded to file for a writ of habeas corpus in the United States District Court for the District of New Hampshire, renewing his claim as to the systematic exclusion of "young persons." The district court permitted appellant to join the record in *La Roche v. Perrin,* 718 F.2d 500 (1st Cir.1983), ruling that since the record in that case was related, at least in part, to the master jury list from which appellant's grand jury was selected, he would be allowed to rely on that record to attempt to establish a *prima facie* case.[2] On the basis of that record the court then

---

1. The venire in *Elbert* was substantially the same as that from which the grand jury was selected that indicted appellant in this case. In that case the Superior Court for Rockingham County held that the evidence presented showed that any statistical disparity in the selection process by which the grand and petit jury panels were picked were not the result of design or purpose, but rather "pure happenstance." It ruled "that there was no systematic or deliberate exclusion of a cognizable group in selecting the Grand Jury or the Petit Jury Panel." *Cf.* 28

U.S.C. § 2254(d); *Miller v. Fenton,* — U.S. —, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *Pierre v. Louisiana,* 306 U.S. 354, 355, 59 S.Ct. 536, 537, 83 L.Ed. 757 (1939); *Anderson v. Johnson,* 371 F.2d 84, 92 (6th Cir.1966), *aff'd,* 390 U.S. 456, 88 S.Ct. 1194, 20 L.Ed.2d 27 (1968).

2. The jury venire in *La Roche,* as in *Elbert,* was also substantially the same as in the present case.

concluded that appellant had established a *prima facie* case and held a hearing to allow the state to rebut the inference of purposeful discrimination. The court thereafter ruled that such a rebuttal had been made and denied the writ.

As previously indicated, at no time during any of these proceedings did appellant introduce evidence to establish the distinctiveness of a young adult "class," ages 18 to 34. Rather, his reliance on the *La Roche* record was limited to proving that a statistical disparity existed between those persons in the jury pool between ages 18 and 34 (12.2%), and similar age groups in the general population (38.4%), the result of which was to establish a *prima facie* case of intentional discrimination against persons within those age parameters in the selection of the jury pool.

The findings of the district court to the effect that this statistical disparity was not caused by intentional or systematic exclusion of this "class" are fully supported by the record. The record shows the following.

During the relevant period,[3] the process of juror selection in Rockingham County was commenced with a letter from the Clerk of the Superior Court to officials known as "keymen" in the towns or cities in that County, requesting that two names per every 100 inhabitants be supplied for jury duty. The letter, pursuant to the statute applicable at the time,[4] instructed the "keymen" to select people which "they judge[d] [were] eligible to serve as jurors." The letter also indicated that they should not select people who were dead, had moved away or were disqualified by statute. At that time, the statute exempted from jury service women who had children under twelve, as well as doctors, lawyers, firemen and certain governmental officials.[5]

Thirteen town officials testified concerning the method actually used by them in the selection of the assigned quotas for the jury venires in question. All denied any purpose or intent to discriminate against 18 to 34 year olds,[6] and proceeded to describe age-neutral criteria for exclusion of individuals from the jury list. All but one testified to the use of methods which amounted to random selection procedures from the voter registration lists, by the use of the so-called count-down method.

Under the count-down method the number of jurors required is divided into the number of registered voters. The figure resulting from this process is used to count down the list, thus determining the individuals selected. The one exception indicated varied only as to the name-source used, not as to the selecting method. That official used the systematic count-down method on the resident tax list instead of the voter registration list. Since with few statutory exceptions, the resident tax list contains the names of all residents between the ages of 18 and 65, whether or not they have actually paid taxes, this list is the substantial equivalent of the voter registration list.[7] Neither the voter registration or tax lists contained the ages of the persons therein named.

There was, however, further refinement of the potential juror list. If a "keyman" did not personally know the individual whose name was randomly selected, the name was automatically sent in to the clerk without further ado. However, if the person was known to the "keyman," the name could be culled from the list if it was an elderly person in poor health or without means of transportation, or if the person was away at college or in the military, or had died or moved away, or was a mother with young children, or if it was a person for whom jury service would constitute an

---

3. In 1981 the New Hampshire "keyman" selection system was changed to a purely random selection system. 1981 N.H.Laws 527:2, N.H. Rev.Stat.Ann. § 500–A:2.

4. *Id.*

5. *Id.* § 500–A:4.

6. *Cf. Gibson v. Zant,* 705 F.2d 1543, 1549 (11th Cir.1983) (mere denials not enough to rebut an inference of purposeful discrimination).

7. 1973 N.H.Laws 72:4, 486:1, N.H.Rev.Stat.Ann. § 72.1.

economic hardship. This culling was carried out in different degrees by the various "keymen." For example, four "keymen" testified that they did *not* exclude elderly persons in poor health or without transportation, or young persons away in college or military service. This disparity of exclusion criteria, together with the lack of an age-dependent exclusion animus, is probably the best evidence of a lack of a systematic, purposeful exclusion of the "class" in question.

This uncontradicted evidence clearly rebuts appellant's allegation that the statistical disparity in the young adults' "group" was brought about by appellees' purposeful discrimination against "young adults," and supports the district court's ruling that "age was not one of the criteria for excluding names from the juror list." *See Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972) (use of race-neutral criteria rebuts a *prima facie* showing of race discrimination).

The district court's findings are entitled to affirmance. Fed.R.Civ.P. Rule 52(a); *Anderson v. City of Bessemer,* — U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

*Affirmed.*