MADDOX, Justice
(dissenting).
The Court of Criminal Appeals reversed the convictions of these three defendants on the ground that the State had violated their rights to a fair trial, in the State’s exercise of its peremptory strikes, even though the trial judge specifically found that the defendants had failed to make a prima facie showing of racial discrimination in the jury selection process. These reversals, for the reasons stated, show why I believe the appellate courts are failing to apply the proper standard of review initially laid down in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as further explained in Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
*170 There is still too much confusion in both the trial courts and the appellate courts regarding the application of Batson, and this is unfortunate. Much of that confusion exists because of a misunderstanding of the basic holding in Batson, which was to prohibit “purposeful discrimination,” a factual determination that Batson left to the trial court.
In Batson, the “purposeful discrimination” was practiced by the prosecution in a case involving a black defendant; in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Batson principle was applied to a white defendant; in Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), Batson was applied to parties in civil cases; in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), Batson was extended to apply to defendants in criminal cases; and, as I had predicted, in J.E.B. v. Alabama, — U.S. —, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), Batson was extended to apply to gender-based strikes.
Through this evolution of Batson, the fundamental object of Batson did not change — it was to prevent purposeful discrimination in the jury selection process, to protect the integrity of the jury system, and to foster public confidence in that system. Batson specifically recognized that ensuring the elimination of “purposeful discrimination” was the duty of the trial court.
The Supreme Court of the United States, in Hernandez, not only restated this purpose of Batson, but also restated the three-pronged test that trial judges should apply and restated the scope of appellate review. Regarding the showing of “purposeful discrimination,” the Court said:
“In Batson, we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. 476 U.S., at 96-98 [106 S.Ct., at 1722-1724], The analysis set forth in Bat-son permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Id., at 96-97 [106 S.Ct., at 1722-1723]. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id., at 97-98 [106 S.Ct., at 1723-1724]. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Id., at 98 [106 S.Ct., at 1724], This three-step inquiry delimits our consideration of the arguments raised by petitioner.”
500 U.S. at 358-59, 111 S.Ct. at 1865-66. In Hernandez, the Court also restated the scope of appellate review of a trial court’s findings when applying the Batson principle. The Court discussed, at great length the deference that must be given to trial courts, and I set out that discussion in full:
“In Batson, we explained that the trial court’s decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal:
“ ‘In a recent Title VII sex discrimination case, we stated that “a finding of intentional discrimination is a finding of fact” entitled to appropriate deference by a reviewing court. Anderson v. Bessemer City, 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985). Since the trial judge’s findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. Id., at 575-576 [105 S.Ct., at 1512-1513]. Batson, supra, at 98, n. 21 [106 S.Ct., at 1724, n. 21].’
“Batson’s treatment of intent to discriminate as a pure issue of fact, subject to review under a deferential standard, accords with our treatment of that issue in other equal protection cases. See Hunter v. Underwood, 471 U.S. 222, 229 [105 S.Ct. 1916, 1921, 85 L.Ed.2d 222] (1985) (Court of Appeals correctly found that District Court committed clear error in concluding state constitutional provision was not adopted out of racial animus); Rogers v. Lodge, 458 U.S. 613, 622-623 [102 S.Ct. *171 3272, 3278-3279, 73 L.Ed.2d 1012] (1982) (clearly-erroneous standard applies to review of finding that at-large voting system was maintained for discriminatory purposes); Dayton Bd. of Ed. v. Brinkman, 443 U.S. 526, 534 [99 S.Ct. 2971, 2977, 61 L.Ed.2d 720] (1979) (affirming Court of Appeals’ conclusion that District Court’s failure to find the intentional operation of a dual school system was clearly erroneous); Akins v. Texas, 325 U.S. 398, 401^02 [65 S.Ct. 1276, 1278, 89 L.Ed. 1692] (1945) (great respect accorded to findings of state court in discriminatory jury selection ease); see also Miller v. Fenton, 474 U.S. 104, 113 [106 S.Ct. 445, 451, 88 L.Ed.2d 405] (1985). As Batson’s citation to Anderson suggests, it also corresponds with our treatment of the intent inquiry under Title VII. See Pullman-Standard v. Swint, 456 U.S. 273, 293 [102 S.Ct. 1781, 1792, 72 L.Ed.2d 66] (1982).
“Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding ‘largely will turn on evaluation of credibility.’ 476 U.S., at 98, n. 21 [106 S.Ct., at 1724, n. 21], In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within a trial judge’s province.’ Wainwright v. Witt, 469 U.S. 412, 428 [105 S.Ct. 844, 854, 83 L.Ed.2d 841] (1985), citing Patton v. Yount, 467 U.S. 1025, 1038 [104 S.Ct. 2885, 2892, 81 L.Ed.2d 847] (1984). [Emphasis in this paragraph added.]
“The precise formula used for review of factfindings, of course, depends on the context. Anderson was a federal civil case, and we there explained that a federal appellate court reviews the finding of a district court on the question of intent to discriminate under Federal Rule of Civil Procedure 52(a), which permits factual findings to be set aside only if clearly erroneous. While no comparable rule exists for federal criminal cases, we have held that the same standard should apply to review of findings in criminal cases on issues other than guilt. Maine v. Taylor, 477 U.S. 131, 145 [106 S.Ct. 2440, 2450, 91 L.Ed.2d 110] (1986); Campbell v. United States, 373 U.S. 487, 493 [83 S.Ct. 1356, 1360, 10 L.Ed.2d 501] (1963). See also 2 C. Wright, Federal Practice and Procedure § 374 (2d ed. 1982 and Supp.1990). On federal habeas review of a state conviction, 28 U.S.C. § 2254(d) requires the federal courts to accord state-court factual findings a presumption of correctness.
“This case comes to us on direct review of the state-court judgment. No statute or rule governs our review of facts found by state courts in cases with this posture. The reasons justifying a deferential standard of review in other contexts, however, apply with equal force to our review of a state trial court’s findings of fact made in connection with a federal constitutional claim. Our cases have indicated that, in the absence of exceptional circumstances, we would defer to state-court factual findings, even when those findings relate to a constitutional issue. See 324 Liquor Corp. v. Duffy, 479 U.S. 335, 351 [107 S.Ct. 720, 729, 93 L.Ed.2d 667] (1987); California Liquor Dealers Assn. v. Midcal Aluminum, Inc., 445 U.S. 97, 111-112 [100 S.Ct. 937, 946-947, 63 L.Ed.2d 233] (1980); see also Time, Inc. v. Firestone, 424 U .S. 448, 463 [96 S.Ct. 958, 969, 47 L.Ed.2d 154] (1976); General Motors Corp. v. Washington, 377 U.S. 436, 441-442 [84 S.Ct. 1564, 1568-1569, 12 L.Ed.2d 430] (1964) (quoting Norton Co. v. Department of Revenue of III., 340 U.S. 534, 537-538 [71 S.Ct. 377, 380, 95 L.Ed. 517] (1951)); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 68 [83 S.Ct. 631, 638, 9 L.Ed.2d 584] (1963); Lloyd A Fry Roofing Co. v. Wood, 344 U.S. 157, 160 [73 S.Ct. 204, 206, 97 L.Ed. 168] (1952). Moreover, ‘an issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question.’ Miller v. Fenton, supra, 474 *172 U.S., at 113 [106 S.Ct., at 451] (citing Dayton Bd. of Ed. v. Brinkman, supra).
“Petitioner advocates ‘independent’ appellate review of a trial court’s rejection of a Batson claim. We have difficulty understanding the nature of the review petitioner would have us conduct. Petitioner explains that ‘[ijndependent review requires the appellate court to accept the findings of historical fact and credibility of the lower court unless they are clearly erroneous. Then, based on these facts, the appellate court independently determines whether there has been discrimination.’ Reply Brief for Petitioner 17. But if an appellate court accepts a trial court’s finding that a prosecutor’s race-neutral explanation for his peremptory challenges should be believed, we fail to see how the appellate court nevertheless could find discrimination. The credibility of the prosecutor’s explanation goes to the heart of the equal protection analysis, and once that has been settled, there seems nothing left to review.
“Petitioner seeks support for his argument in Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485 [104 S.Ct. 1949, 80 L.Ed.2d 502] (1984), and Miller v. Fenton, supra. Bose Corp. dealt with review of a trial court’s finding of ‘actual malice,’ a First Amendment precondition to liability in a defamation case, holding that an appellate court ‘must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity.’ 466 U.S., at 514 [104 S.Ct., at 1967]. Miller accorded similar treatment to a finding that a confession was voluntary. 474 U.S., at 110 [106 S.Ct., at 449]. Those cases have no relevance to the matter before us. They turn on the Court’s determination that findings of vol-untariness or actual malice involve legal, as well as factual, elements. See Miller, supra, at 115-117 [106 S.Ct., at 452-453]; Bose Corp., supra, 466 U.S., at 501-502 [104 S.Ct., at 1959-1960]; see also Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 685 [109 S.Ct. 2678, 2694, 105 L.Ed.2d 562] (1989) (‘The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law’). Whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as Batson recognized, a question of historical fact.
“Petitioner also looks to a line of this Court’s decisions reviewing state-court challenges to jury selection procedures. Many of these cases, following Norris v. Alabama, 294 U.S. 587 [55 S.Ct. 579, 79 L.Ed. 1074] (1935), have emphasized this Court’s duty to ‘analyze the facts in order that the appropriate enforcement of the federal right may be assured,’ id., at 590 [55 S.Ct., at 580] or to ‘make independent inquiry and determination of the disputed facts,’ Pierre v. Louisiana, 306 U.S. 354, 358 [59 S.Ct. 536, 539, 83 L.Ed. 757] (1939). See, e.g., Whitus v. Georgia, 385 U.S. 545, 550 [87 S.Ct. 643, 646, 17 L.Ed.2d 599] (1967); Avery v. Georgia, 345 U.S. 559, 561 [73 S.Ct. 891, 892, 97 L.Ed. 1244] (1953); Patton v. Mississippi, 332 U.S. 463, 466 [68 S.Ct. 184, 186, 92 L.Ed. 76] (1947); Smith v. Texas, 311 U.S. 128, 130 [61 S.Ct. 164, 165, 85 L.Ed. 84] (1940). The review provided for in those cases, however, leaves room for deference to state-court factual determinations, in particular on issues of credibility. For instance, in Akins v. Texas, 325 U.S. 398 [65 S.Ct. 1276, 89 L.Ed. 1692] (1945), we said:
“ ‘[T]he transcript of the evidence presents certain inconsistencies and conflicts of testimony in regard to limiting the number of Negroes on the grand jury. Therefore, the trier of fact who heard the witnesses in full and observed their demeanor on the stand has a better opportunity than a reviewing court to reach a correct conclusion as to the existence of that type of discrimination. While our duty, in reviewing a conviction upon a complaint that the procedure through which it was obtained violates due process and equal protection under the Fourteenth Amendment, calls for our examination of evidence to determine for ourselves whether a federal constitutional right has been denied, expressly or in substance and effect, Norris v. Alabama, 294 U.S. 587, 589-90 [55 *173 S.Ct. 579, 580]; Smith v. Texas, 311 U.S. 128, 130 [61 S.Ct. 164, 165], we accord in that examination great respect to the conclusions of the state judiciary, Pierre v. Louisiana, 306 U.S. 354, 358 [59 S.Ct. 536, 538]. That respect leads us to accept the conclusion of the trier on disputed issues “unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process,” Lisenba v. California, 314 U.S. 219, 238 [62 S.Ct. 280, 291, 86 L.Ed. 166] [ (1941) ], or equal protection. Cf. Ashcraft v. Tennessee, 322 U.S. 143, 152, 153 [64 S.Ct. 921, 925, 926, 88 L.Ed. 1192] [ (1944) ]; Malinski v. New York, 324 U.S. 401, 404 [65 S.Ct. 781, 783, 89 L.Ed. 1029] [(1945)].’ Id, at 401-402 [65 S.Ct., at 1278-1279].
“Other eases in the Norris line also express our respect for factual findings made by state courts. See Whitus, supra [385 U.S.], at 550 [87 S.Ct., at 646]; Pierre, supra, [306 U.S.], at 358 [59 S.Ct., at 538-539].
“In the case before us, we decline to overturn the state trial court’s finding on the issue of discriminatory intent unless convinced that its determination was clearly erroneous. It ‘would pervert the concept of federalism,’ Bose Corp., supra [466 U.S.], at 499 [104 S.Ct., at 1959], to conduct a more searching review of findings made in state trial court than we conduct with respect to federal district court findings. As a general matter, we think the Norris line of cases reconcilable with this clear error standard of review. In those eases, the evidence was such that a ‘reviewing court on the entire evidence [would be] left with the definite and firm conviction that a mistake ha[d] been committed.’ United States v. United States Gypsum Co., 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948). For instance, in Norris itself, uneontradieted testimony showed that ‘no negro had served on any grand or petit jury in [Jackson County, Alabama,] within the memory of witnesses who had lived there all their lives.’ 294 U.S., at 591 [55 S.Ct., at 581]; see also Avery v. Georgia, supra [345 U.S.], at 560-561 [73 S.Ct., at 892]; Patton v. Mississippi, supra [332 U.S.], at 466 [68 S.Ct., at 186]; Smith v. Texas, supra [311 U.S.], at 131 [61 S.Ct., at 165]. In circumstances such as those, a finding of no discrimination was simply too incredible to be accepted by this Court.
“We discern no clear error in the state trial court’s determination that the prosecutor did not discriminate on the basis of the ethnicity of Latino jurors. We have said that ‘[w]here there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.’ Anderson v. Bessemer City, 470 U.S. 564, 574 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985). The trial court took a permissible view of the evidence in crediting the prosecutor’s explanation. Apart from the prosecutor’s demeanor, which of course we have no opportunity to review, the court could have relied on the facts that the. prosecutor defended his use of peremptory challenges without being asked to do so by the judge, that he did not know which jurors were Latinos, and that the ethnicity of the victims and prosecution witnesses tended to undercut any motive to exclude Latinos from the jury. Any of these factors could be taken as evidence of the prosecutor’s sincerity. The trial court, moreover, could rely on the fact that only three challenged jurors can with confidence be identified as Latinos, and that the prosecutor had a verifiable and legitimate explanation for two of those challenges. Given these factors, that the prosecutor also excluded one or two Latino venirepersons on the basis of a subjective criterion having a disproportionate impact on Latinos does not leave us with a ‘definite and firm conviction that a mistake has been committed.’ United States v. United States Gypsum Co., supra, 333 U.S., at 395 [68 S.Ct., at 542].”
500 U.S. at 364-70, 111 S.Ct. at 1868-72. In my opinion, the Court of Criminal Appeals clearly failed to accord due deference to the trial court’s finding of no prima facie showing. When the trial court did require the prosecutor to state race-neutral reasons for his peremptory strikes, the trial court found *174 the reasons given by the prosecutor to be credible. How can an appellate court, in light of the principles of law applicable to appellate review spelled out so forcefully in Hernandez, hold that the trial court’s finding was “clearly erroneous” and overturn the trial court’s determination in these cases? I believe that the Court of Criminal Appeals erred and that this Court also errs in refusing to overturn the judgments of the Court of Criminal Appeals. The purpose of Batson was to protect the integrity of the jury system — to make sure that prospective jurors not be purposely excluded from jury service solely because of some characteristic that the juror has that is not related to the particular case to be tried. To exclude such prospective jurors from jury service would destroy the integrity of the judicial system and the public’s confidence in that system; that is the issue Batson addressed. To require a retrial of these cases when the defendants have failed to carry their burden of showing that the excluded jurors were struck solely because of their race, in my opinion, destroys the very thing that Batson was initially designed to protect.
The Supreme Court, in Hernandez, went to great length to set out a detailed road map for the application of Batson, and, in my opinion, the result reached by the Court of Criminal Appeals and this Court in these eases shows that these Courts have nevertheless lost their way.
Based on the foregoing, I must respectfully dissent.