THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM J. DESSAURE, Defendant.

County Court, Nassau County, Special Term, December 30, 1946.

*Stanley Faulkner* for defendant.

*James N. Gehrig, District Attorney* (*Philip Huntington* and *Frank A. Gulotta* of counsel), for plaintiff.

*Thurgood Marshall* and *Marian W. Perry* for National Association for Advancement of Colored People, *amicus curiæ*, in support of defendant's position.

*Abraham Unger* for New York City Chapter National Lawyers Guild, *amicus curiæ*, in support of defendant's position.

HILL, J. The July, 1946, Grand Jury having returned an indictment for assault in the second degree against the defendant, the latter moved to vacate the indictment on the ground that the grand jury " was unconstitutionally formed in that there was a systematic and intentional exclusion of negroes from said grand jury ". In his affidavit in support of the notice of motion the defendant made the same allegation. This was, of course, the allegation merely of a conclusion. He added, however, that no Negro had been called to serve upon the grand jury in Nassau County and attached the affidavits of three Negro residents of the county who deposed that although qualified for jury service they had never been called for either trial or grand jury service. The defendant further alleged that he could produce many more such persons upon the hearing of the motion. Upon argument of the motion a hearing was ordered and subsequently held. At that hearing the defendant produced as witnesses the three persons who had made the affidavits in support of his notice of motion and two others in addition. One of the latter was not asked whether or not he had ever been called to serve as a trial or grand juror, perhaps because it appeared that he had left school at the third grade at the age of eleven or twelve years. The other testified that some years ago he had been called but declined to qualify upon the ground that he was not a property owner. The fact that four or five qualified Negroes had not been called for service upon a petit or grand jury could not possibly give rise to any inference of intentional and systematic exclusion of Negroes from a jury list because, of course, the drawing of jurors from a list for service on petit juries has been by lot. Their testimony alone, therefore, would be insufficient to establish a prima facie case of systematic and intentional exclusion.

The defendant, however, also called the Commissioner of Jurors who was examined at length, and upon the record of the hearing the question presented is — first, whether upon such

testimony a prima facie case was established, and secondly, if so, whether it was rebutted and overcome and whether upon all the proof adduced, a systematic and intentional exclusion of Negroes was shown.

Although the defendant's charge is that there was such exclusion of Negroes from the grand jury list made up in 1945 for the year 1946, it is necessary to examine the method of drawing both trial jurors and grand jurors over a period of years under the statutes applicable to Nassau County. There is in Nassau County a Commissioner of Jurors appointed by the Board of Judges consisting of the four resident Supreme Court Justices and the County Judge. The commissioner annually prepares a list of trial jurors, taking the names for that list from the lists of registered voters. That list totals approximately 18,000. The percentage of Negroes according to the 1940 census is approximately 3%, so that the number of Negroes who would appear upon the trial jury list of 18,000, if chosen in that proportion, would be about 540. There are no lists kept separately of Negroes placed upon the trial jury list of 18,000, nor is there any record kept of the number of jurors who are called for trial jury duty; but the proof sufficiently shows that Negroes are constantly serving on petit juries in the courts of this county. Those courts take judicial notice of that fact and I have personal knowledge of it as the result of my service as Acting County Judge in this county. Indeed, it may be taken as established and it is conceded that such is the case. That fact would seem to demonstrate that Negroes have their proportionate representation upon the trial jury list and to substantiate the testimony of the Commissioner of Jurors that such list is formed from the lists of registered voters throughout the county without regard to color. It must indeed be held that not only has the defendant failed to establish a prima facie case of discrimination against Negroes on the trial jury list but has, on the contrary, satisfactorily shown that there is no such discrimination.

The grand jury list is chosen from the trial jury list. The statute applicable in Nassau County provides that in December of each year, the Board of Judges and the Commissioner of Jurors shall make up a list of names of 600 persons to serve as grand jurors during the ensuing year and until a new list shall be returned. This list of 600 is required by the statute to be " selected " from the trial jury list prepared and filed in that year by the Commissioner of Jurors (L. 1899, ch. 441, § 13, as amd. by L. 1921, ch. 280, § 2, L. 1927, ch. 33, L. 1938, ch. 552,

§ 27). This statute was enacted many years ago and following its enactment and the appointment of the Commissioner of Jurors by the Board of Judges, they prepared the required list of 600 grand jurors by selecting them from the trial jury list. That list is continued from year to year except as it may be annually depleted by deaths, removals from the county and the like, with the result that in December of each succeeding year only the number required to bring the total up to 600 is selected. The number so required has run from 15 up to 60, and in December, 1945, the number was 45. In selecting the original 600 for the grand jury list it was, of course, necessary for the Board of Judges and the Commissioner of Jurors to exercise some degree of discretion in choosing 600 out of the list of 18,000. The elements which they considered in selecting that list were — those who had already served before as grand jurors, petit jurors who had served on trial juries for a considerable period of time, recommendations made by the members of the Board of Judges, and applications by individuals to be placed on the grand jury list, made either to the commissioner or to one or more of the judges. Geographical considerations constituted another element in order that the grand jury list might be spread proportionately throughout the county so as to result in a proper cross section of the qualified citizens of the county. The same method of selection was followed and the same elements were considered in selecting the number annually necessary to keep the total of 600, and such was the method used in selecting the 45 required to make up that number in December, 1945, for the year 1946.

The ratio of qualified Negroes to qualified whites being approximately 3%, the number of Negroes upon a grand jury list of 600, if that proportion were followed, would be 18, and the number on the list of 45 would be 1⅓. The result is that in every election district in the county there must necessarily be many who are qualified but only a few to be drawn. Thus, in preparing or selecting a list of 600 out of 18,000 for grand jury service, and assuming that in the particular district there were 100 qualified, only 3 would be selected, and in preparing a list of 45 for grand jury service only 1 out of every 400 would be selected. Thus, necessarily, discretion must be exercised and it cannot possibly be called discrimination where so few are to be selected from so many. It is quite apparent that if discrimination could be said to exist in such case, it would apply to white over white as well as to white over black. Certainly it could not be said to be a systematic and intentional exclusion of blacks

where there is nothing to show any such discrimination except the fact that thus far over a period of ten years or so no negro has been selected for a grand jury, particularly in the light of the testimony of the commissioner in giving in detail the method of the preparation of the grand jury list which is selected by the commissioner and the five judges. The latter, therefore, have the responsibility of making the determination. Many on the list are proposed by the commissioner as the result of applications made to him for grand jury service. Apart from that he prepares annually a list of from 60 to 100 for consideration by the Board of Judges, and according to his testimony the question of color has never entered the preparation of that list. None of the judges was called as a witness and indeed it was conceded by the defendant expressly that no discrimination by any of the judges in the preparation of the list was claimed to exist. The question, therefore, narrows down to whether the Commissioner of Jurors in presenting his proposed list of 60 to 100 annually, intentionally discriminates against Negroes.

The defendant relies in support of his motion upon recent decisions by the Supreme Court of·the United States. The most recent are as follows: *Norris* v. *Alabama* (294 U. S. 587); *Hale* v. *Kentucky* (303 U. S. 613); *Pierre* v. *Louisiana* (306 U. S. 354); *Hill* v. *Texas* (316 U. S. 400).

These cases all arose in Southern States containing large Negro populations. It needs no elaboration to show that the public policy with respect to Negroes in those States is quite different from the public policy in the State of New York. It is well known that in those States there is discrimination against Negroes for the purpose, by legislation and by practice, of keeping control of the State government and all its branches in the white citizens of those States. It is unnecessary to go into the history and the reasons for that policy, which doubtless stemmed in part at least from the factors encountered in the reconstruction period following the war between the States. The effort of those States, for reasons which they deemed sufficient, to maintain so-called "white supremacy" is a matter of common knowledge. Indeed, it appears evident from the many cases which are taken to the Supreme Court of the United States for relief under the Federal Constitution from legislation and practices of some of the Southern States which discriminate against the Negro in violation of the provision of that Constitution. This background is, of course, well known to the Justices of the Supreme Court and the County Judge

and their decisions must be considered in the light of that background.

The situation presented in those States should be compared with that in the State of New York. The history of this State, both legislative and sociological, shows that its public policy, long established, is quite the opposite and aims at maintaining the equality of the Negro with the white, both by provisions of its Constitution and by its enactment long since of its Civil Rights Law, in which expressly is preserved equality between whites and Negroes in jury service. Still more recently is its enactment of the antidiscrimination statutes, which again demonstrate that the State of New York by its legislation and by its careful implementing of that legislation, is in the vanguard of the States whose public policy is to maintain equality between the races. Because of that fact the presumption of regularity and of due performance of duty on the part of officials of the State of New York is all the more to be given effect. Hence, in this case it must necessarily be presumed that the judges and the commissioner acted in accordance with the Constitution, the statutes and the public policy of the State.

A brief examination of some of the authorities above referred to in the United States Supreme Court will clearly show the great difference between the situations presented in those cases and the situation here presented in the county of Nassau in the State of New York.

*Hill* v. *Texas* (*supra*) involved the question of selection of grand juries in Dallas County, Texas. The proportion in that county was 58,000 white to 8,000 black, or approximately 14% black. The evidence adduced showed that no Negro had been drawn for a grand jury in that county for over fifty years although the census showed that there was a great number of literate and qualified Negroes in the county. The fact alone that no Negro had been chosen for jury service or placed upon a trial or grand jury list for a half century could not have resulted from chance or accident. The Commissioners of Jurors testified that they chose for the grand jury white men whom they knew and whom they knew to be qualified. They testified that they knew no Negroes who were qualified, and further testified that they had made no investigation to ascertain whether there were any Negroes qualified to serve. By so failing to investigate they failed in their constitutional duty because by so failing, discrimination against Negroes would necessarily result. The court therefore held a prima facie case of systematic and intentional exclusion had been established.

In *Pierre* v. *Louisiana* (*supra*) the parish involved had a population of about 50% whites and 50% Negroes; almost 70% of the Negroes were literate and apparently qualified for service, yet no Negro had ever been selected for a grand jury, and so far as memory served the witnesses, no Negro had appeared upon a trial jury list for forty years. There again the decision was the same as in the case of *Hill* v. *Texas* (*supra*), that a prima facie case of systematic and intentional exclusion had been shown.

In *Hale* v. *Kentucky* (*supra*) and in *Norris* v. *Alabama* (*supra*) the situation was quite similar to those above discussed. In both States it appeared that there had been no Negro on a trial jury list or on a grand jury list for a long period of years although the Negro population was large and there was such a considerable number of qualified Negroes that the names of Negroes would normally appear on the list unless discrimination existed. The fact established was that none were put on the list and the testimony of the officers in charge was far from convincing and not even credible.

A comparison of those cases with the situation existing here demonstrates beyond question that they are in no way applicable to the County of Nassau, State of New York. Here it is beyond question that the petit jury list of 18,000 is chosen without discrimination, that Negroes and whites are placed upon it without any question of color, and that the Negroes from the trial jury list are constantly serving as trial jurors in the courts of this county. The grand jury percentage of the trial jury list of 18,000 is so small, as has already been pointed out, that it would permit the choosing of only 3 men from the list out of 100 for grand jury service, and in the case of selecting 45 to make up the 600 for the year 1946 the choice would be limited to only 1 out of 400. Bearing in mind the factors and elements considered and used in selecting that list, it cannot possibly be said that the failure to select a Negro was due to intentional discrimination. Indeed, I am unable to find any reason why the authorities should seek to exclude Negroes from the grand jury which merely passes upon the question whether an accused should be indicted for a crime charged, and yet not exclude them from a petit jury which tries an accused for a crime and passes upon a question of guilt or innocence where life or liberty is at stake.

It is indeed a serious charge against the judiciary responsible for the selection of grand jurors to imply that such discrimina-

tion is practiced. The proof adduced is clearly insufficient to give rise to any such inference. No prima facie case of discrimination has been established, in fact the evidence points to the contrary.

Motion to vacate the indictment is denied.