THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM J. DESSAURE, Appellant.

Argued October 11, 1948; decided April 14, 1949.

*Stanley Faulkner* and *Franklin H. Williams* for appellant. I. The County Court erred in denying appellant's motion to vacate the indictment returned by an all-white jury from which all qualified Negroes were and had been for a long period of

years intentionally and systematically excluded in violation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution. The systematic and intentional exclusion of qualified Negroes from a grand jury service over a long period of years is a denial of equal protection of the laws to a Negro defendant. (*Strauder* v. *West Virginia,* 100 U. S. 303; *Ex parte Virginia,* 100 U. S. 339; *Neal* v. *Delaware,* 103 U. S. 370; *Hollins* v. *Oklahoma,* 295 U. S. 394; *Hale* v. *Kentucky,* 303 U. S. 613; *Pierre* v. *Louisiana,* 306 U. S. 354; *Smith* v. *Texas,* 311 U. S. 128; *Hill* v. *Texas,* 316 U. S. 400; *Patton* v. *Mississippi,* 332 U. S. 463.) II. The record of the hearing before the court in this case upon appellant's motion to vacate the indictment clearly established a systematic and intentional exclusion of qualified Negroes from grand jury service in Nassau County solely because of race and color. (*Norris* v. *Alabama,* 294 U. S. 587; *Patton* v. *Mississippi,* 332 U. S. 463.) III. When a defendant takes the witness stand for the sole purpose of being examined concerning the voluntariness of a statement made by him, cross-examination cannot proceed beyond that adduced on direct examination. (*People* v. *Creasy,* 236 N. Y. 205; *People* v. *Wright,* 133 App. Div. 133; *People* v. *Freeman,* 203 N. Y. 267; *People* v. *Crapo,* 76 N. Y. 288.) IV. There can be but one recorded verdict in a case. (*People* v. *Faber,* 199 N. Y. 256; *Wilkins* v. *Abbey,* 168 Misc. 416; *People* v. *Moore,* 261 App. Div. 876; *People* v. *Saitta,* 170 App. Div. 665.) V. The verdict was contrary to the law and against the weight of the evidence.

*James N. Gehrig, District Attorney* (*Philip Huntington* of counsel), for respondent. I. Denial of defendant's motion to vacate the indictment, on the ground of alleged discrimination, was correct on both the facts and the law. II. A public board or officer is presumed to have proceeded regularly. (*Rugg* v. *Spencer,* 59 Barb. 383; *People ex rel. Langdon* v. *Dalton,* 46 App. Div. 64; *Remington* v. *State of New York,* 116 App. Div. 522; *Wolfe* v. *Burke,* 56 N. Y. 115; *People ex rel. Wiesenthal* v. *Dunne,* 195 App. Div. 225; *Matter of McLean,* 138 N. Y. 158; *Matter of Marcellus,* 165 N. Y. 70; *Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343, 248 U. S. 369; *Matter of Richmond Rys.* v. *Gilchrist,* 225 App. Div. 371; *Matter of Scahill* v. *Drzewucki,* 244 App. Div. 530.) III. Defendant failed to meet or overcome

the presumption of regularity. (*People* v. *Weiss,* 290 N. Y. 160; *People* v. *Paige,* 283 N. Y. 479.) IV. The selection of grand jurors in Nassau County necessarily involves the exercise of judicial discretion, and the established rule is that the exercise of judicial discretion may not be disturbed unless an abuse of such discretion is clearly and positively shown. (*Nann* v. *Raimist,* 255 N. Y. 307; *Steinkritz Amusement Corp.* v. *Kaplan,* 257 N. Y. 294; *Clark* v. *Delaware & Hudson R. R. Corp.,* 245 App. Div. 447.)

LOUGHRAN, Ch. J. On July 30, 1946, a Grand Jury, sitting with the County Court of Nassau County indicted the defendant for assault in the second degree and subsequently a trial jury found him guilty of that crime. The defendant is a Negro. Both before the trial and after it, he moved " for an order vacating the indictment herein found July 30, 1946 by the Grand Jury of Nassau County, on the ground that the said Grand Jury was unconstitutionally formed in that there was a systematic and intentional exclusion of Negroes from said Grand Jury ". The Acting County Judge of Nassau County held a hearing on that motion and denied it (193 Misc. 381); the order for denial thereof as well as the judgment of conviction were affirmed on an appeal taken by the defendant to the Appellate Division (273 App. Div. 984); and the defendant thereafter brought the case here when a Judge of this court certified that a question of law was involved which ought to be reviewed by us (see Code Crim. Pro., § 520, subd. 3).

Pursuant to statute, the list of grand jurors in Nassau County has long contained 600 names (McKinney's Unconsol. Laws, § 3813). From 15 to 60 vacancies which have occurred therein annually through death, removal from the county, and disability for age or physical condition have been filled each December by the County Commissioner of Jurors and the Board of Judges of the County out of 60 to 100 names taken by the commissioner from the county trial jury list (see McKinney's Unconsol. Laws, §§ 3802, 3813).

The case for the defendant rests upon two circumstances: (1) The Commissioner of Jurors of the County submitted to prospective jurors a questionnaire which required them to indicate thereon their color, sex, weight, height and color

of eyes and hair. (2) For a period found by the County Judge to have been "ten years or so" (193 Misc. 381, 385), no Negro has been selected for service as a grand juror in Nassau County, though numbers of Negroes who were qualified for such service resided in that county during that period.

The first of these two circumstances was accounted for by the commissioner in these words: "Well, every juror that we qualify in Nassau County, the name is submitted to the Identification Bureau of the Police Department in Nassau County, to be checked against their files of criminal records, which comes from the F.B.I. office in Washington. * * * Sometimes we got eight or ten convictions against a fellow by the name of Harry Jones, all different people, all different places, at different times, so, in order to eliminate that, when the new questionnaires were printed I had this identification put in there, so when the Police Department reported to me that a person of such a name had a criminal record and his history was such and such, his hair was such a color, his eyes was such a color, and he was either a white man or a colored man or an Indian or a Chinaman or something, I can identify the man, there is no chance of confusion or mistake." This testimony of the commissioner was credited by the County Judge who saw and heard him, and that determination is for us the end of this part of the case, because we have here no power to deny the right of the trier of the fact so to believe a creditable witness (*People* v. *Scheinman,* 295 N. Y. 142).

Hence we pass to the second of the two circumstances on which the defendant relies, i.e., no Negroes had been selected for grand jury service in Nassau County for a period of "ten years or so", as the County Judge found (193 Misc. 381, 385). In this connection, the Judge said: "There are no lists kept separately of Negroes placed upon the trial jury list of 18,000, nor is there any record kept of the number of jurors who are called for trial jury duty; but the proof sufficiently shows that Negroes are constantly serving on petit juries in the courts of this county. * * * Indeed, it may be taken as established and it is conceded that such is the case. That fact would seem to demonstrate that Negroes have their proportionate representation upon the trial jury list and to substantiate the testimony of the Commissioner of Jurors that such list

is formed from the lists of registered voters throughout the county without regard to color." (193 Misc. 381, 383.) This finding of the County Judge has not been challenged.

In 1946, when the indictment in question was returned, the Board of Judges of Nassau County was composed of the four Supreme Court Justices then resident in the county and the County Judge (see McKinney's Unconsol. Laws, § 3802). There is evidence, and the County Judge found, that some names of trial jurors were added to the grand jury list by the Board of Judges of their own motion and without submission thereof by the Commissioner of Jurors. (193 Misc. 381, 384.) Under the statute, the certification of that grand jury list has over the years been the responsibility of the Judges alone (McKinney's Unconsol. Laws, § 3813). No charge of discrimination has here been made against them nor has anyone imputed to them a failure in perception of their plain statutory and constitutional duty. (Cf. Civil Rights Law, § 13; N. Y. Const., art. I, § 11; U. S. Const., 14th Amendt.)

The controversy is reduced, then, to a claim that the commissioner systematically and intentionally kept the names of Negroes off the lists of trial jurors from which vacancies on the grand jury list were filled each December. In respect of that reproach, the commissioner was not silent. He said: " Well, the only thing I can say on that, when I recommend them I don't know their color, I don't refer to their color in selecting the names. I mean, when I am selecting those names or getting those names out of the files or taking it from the files, I don't know what their color is or their religion or their political affiliations." This testimony, too, was credited by the County Judge who had the commissioner before him.

The issues thus decided have a background that remains to be noticed. The County Judge said: " Here it is beyond question that the petit jury list of 18,000 is chosen without discrimination, that Negroes and whites are placed upon it without any question of color, and that the Negroes from the trial jury list are constantly serving as trial jurors in the courts of this county. The grand jury percentage of the trial jury list of 18,000 is so small * * * that it would permit the choosing of only 3 men from the list out of 100 for grand jury service, and in the case of selecting 45 to make up the 600 for the

year 1946 the choice would be limited to only 1 out of 400.'' (193 Misc. 381, 387.) According to the 1940 census, there was 1 Negro to every 33 white persons in Nassau County. If that ratio had been applied to the 45 grand jurors selected in the year 1946, the naming of 1 Negro would have afforded proportionate representation to his race among those added to the general grand jury list for that year, assuming, of course, that all Negroes then resident in the county were duly qualified. The relevant statutes, however — here unchallenged by the defendant — required no fixed representation of racial or other groups on the grand jury list in question. Those statutes authorized the Board of Judges to certify as grand jurors only persons found by them to be '' Free from all legal exceptions; of fair character; of approved integrity; of sound judgment; and well informed '' (see Judiciary Law, § 502, subd. 5; Code ·Crim. Pro., § 229-b; McKinney's Unconsol. Laws, § 3813; cf. Code Crim. Pro., § 223).

The conclusion of the County Judge was that no prima facie case of discrimination had been established. The Appellate Division unanimously affirmed. We cannot announce a contrary decision as matter of law on this record.

Other points, involving the sufficiency of the proof, the breadth of the prosecutor's cross-examination and the regularity of the verdict, are raised by the defendant. These have been examined and found to be without merit.

The judgment should be affirmed.

DESMOND, J. (dissenting). If the question here was whether those who chose this Nassau County Grand Jury had deliberately, consciously, and conspiratorially in the manner of the Ku Klux Klan, refused to let Negroes sit as grand jurors, I would, respecting the limits of our jurisdiction, have to agree that we are bound by the findings below that nothing of the sort was here proven. But that is not the question at all. We are bound, by the Federal Constitution as interpreted in *Smith* v. *Texas* (311 U. S. 128) in many other Supreme Court decisions, and in our own *People* v. *Prior* (294 N. Y. 405, 411, 422) to strike down an indictment when there has been systematic exclusion from the grand jury of any identifiable special group. Invalidity of an indictment, under those cases, results not only from active, conscious-planned exclusion but from following, or

failing to change, for any reason or no reason at all, a " course of conduct " which in fact and whatever be the actual intent of its administrators, operates " to discriminate in the selection of jurors on racial grounds " (*Hill* v. *Texas,* 316 U. S. 400, 404). That there were in Nassau County numerous Negroes qualified for grand jury service is here admitted. That the system followed in Nassau County for decades kept all such Negroes off grand juries, including the grand jury which indicted appellant, is plain from this record. This indictment was therefore void and the judgment should be reversed and the indictment dismissed (see *Patton* v. *Mississippi,* 332 U. S. 463, 466, 468, 469; 58 Yale L. J. 283; 49 Col. L. Rev. 211). Only by so holding, I believe, can we obey the Federal Constitution and our own State's fixed policy (see Civil Rights Law, § 13).

FULD, J. (dissenting). In my view, the indictment against defendant, a Negro, cannot stand; as I read the record before us, it permits no conclusion other than that there was systematic and purposeful exclusion of members of his race from the Nassau County Grand Jury. (See, e.g., *Patton* v. *Mississippi,* 332 U. S. 463, 465; *Hill* v. *Texas,* 316 U. S. 400; *Smith* v. *Texas,* 311 U. S. 128; *Pierre* v. *Louisiana,* 306 U. S. 354; *Norris* v. *Alabama,* 294 U. S. 587; *Carter* v. *Texas,* 177 U. S. 442; *Neal* v. *Delaware,* 103 U. S. 370; *Strauder* v. *West Virginia,* 100 U. S. 303.)

Traditional in our jury system is the concept that the jury, petit or grand, be a democratic and representative body drawn impartially from a cross section of the community to assure that it reflects the interest and viewpoints of all races, classes and groups. (See, e.g., *Thiel* v. *Southern Pacific Co.,* 328 U. S. 217, 220; *Smith* v. *Texas,* 311 U. S. 128, *supra; Pierre* v. *Louisiana,* 306 U. S. 354, 358, *supra.*) The best guarantee of an equal and impartial choice is, of course, selection entirely by lot, and such a design — though not required by the Federal or State Constitutions — is apparent in the statutes which establish the grand jury machinery in this State. (Code Crim. Pro., §§ 223, 224; see, e.g., *People* v. *Prior,* 294 N. Y. 405, 409, 413; *People* v. *Naughton,* 7 Abb. Prac. [N. S.] 421, 426.) The present attack, however, is based not upon any claim that the statute or policy of this State was violated, but rather upon

the argument that defendant was deprived, by the system practiced in Nassau County, of the equal protection of the laws guaranteed by the Federal Constitution.

Unquestionably, exclusion of qualified persons from service on a grand jury on the ground of either race or color invades the realm of the equal protection clause and impinges on basic rights. "Indictment by Grand Jury and trial by jury", the Supreme Court declared not long ago, "cease to harmonize with our traditional concepts of justice at the very moment particular groups, classes or races — otherwise qualified to serve as jurors in a community — are excluded as such from jury service." (*Pierre* v. *Louisiana, supra,* p. 358.)

The facts and figures before us tell the story. Nassau County contains within its boundaries an appreciable Negro population, with a fairly heavy concentration in several of its towns. It is conceded that many Negroes were qualified (and that is demonstrated beyond peradventure, I suggest, by the circumstance that two Negroes were selected and placed on the grand jury list but a short time after the court below denied defendant's motion to set aside his indictment). In spite of all this, the sorry fact emerged at the hearing that no Negro had ever been called for service on that county's grand jury within the memory of witnesses or officials, a period of almost twenty years. That proof, particularly in the light of further evidence that each prospective juror was required to answer a question as to his "Color" in the qualifying questionnaire, made out a substantial prima facie case which the People, in my opinion, failed to meet. (See *Patton* v. *Mississippi,* 332 U. S. 463, *supra; Hill* v. *Texas,* 316 U. S. 400, *supra; Smith* v. *Texas,* 311 U. S. 128, *supra; Pierre* v. *Louisiana,* 306 U. S. 354, *supra; Carter* v. *Texas,* 177 U. S. 442, *supra.*)

Any attempt to explain the Negro's complete and long-continued absence from the grand jury as a product of chance or accident, or as the result of heedlessness or inattentiveness, strikes me as not only unreasonable but as incredible. And, in any event, the thrust of the equal protection clause deprives such an explanation of either validity or force by imposing an active duty upon jury selection officials. We have been told in unmistakable terms that "What the Fourteenth Amendment prohibits is racial discrimination in the selection of grand

juries ", and that it matters not whether the discrimination is " accomplished ingeniously or ingenuously "— actively by out-right elimination on the ground of color, or passively by failure to take affirmative action to insure that the jury be democratically and representatively chosen. (See *Smith* v. *Texas,* 311 U. S., *supra,* at pp. 131–132; *Hill* v. *Texas,* 316 U. S., *supra,* at p. 404.) In *Hill* v. *Texas* (*supra*), for instance, wherein the jury commissioners had " made no effort to ascertain whether there were within the county members of the colored race qualified to serve as jurors," the Supreme Court made it clear that those officials " thus failed to perform their constitutional duty° * * * not to pursue a course of conduct in the administration of their office which would operate to discriminate in the selection of jurors on racial grounds." That attitude of indifference and complacency was deemed sufficient to point to unconstitutional exclusion and to require reversal of the conviction. " Discrimination ", the court went on to say, " can arise from the action of commissioners who exclude all negroes whom they do not know to be qualified and who neither know nor seek to learn whether there are in fact any qualified to serve. In such a case, discrimination necessarily results where there are qualified negroes available for jury service."

It is no answer, as the majority opinion suggests, that the jury commissioner claimed that he was not motivated by any design to discriminate against members of the Negro race. Such testimony has been uniformly rejected on the ground that general protestations, bland professions, as to a lack of deliberate design, are insufficient in the face of figures establishing the total absence of Negroes from the jury list. (See, e.g., *Norris* v. *Alabama,* 294 U. S. 587, *supra.*) As the Supreme Court wrote in the *Norris* case, " That showing as to the long-continued exclusion of negroes from jury service, and as to the many negroes qualified for that service, could not be met by mere generalities. If * * * the mere general assertions by officials of their performance of duty were to be accepted as an adequate justification for the complete exclusion of negroes from jury service, the constitutional provision — adopted with special reference to their protection — would be but a vain and illusory requirement " (294 U. S., at p. 598).

In sum, the record establishes that there was systematic and purposeful exclusion of Negroes, and that, as a result, defendant was denied the equal protection of the laws guaranteed by the Federal Constitution. Since his objection was timely, I see no alternative but reversal of the conviction and setting aside of the indictment. [See 299 N. Y. 682.]

LEWIS, CONWAY and DYE, JJ., concur with LOUGHRAN, Ch. J.; DESMOND and FULD, JJ., dissent in separate opinions.

Judgment affirmed.