OPINION OF THE COURT
Peter P. Rosato, J.
Plaintiff Holtzman, in her official capacity as District Attorney of Kings County, seeks a judgment pursuant to CPLR 3001, (1) declaring that both the United States and New York State Constitutions prohibit defense counsel from exercising "race-based” peremptory challenges, i.e., using peremptory challenges to exclude prospective jurors on the basis of race, or for that matter, on the basis of sex, religion, or national origin; (2) declaring that the Judges and Justices named herein are not to grant peremptory challenges without making further inquiry when it is shown, prima facie, that defense counsel are in fact exercising race-based peremptories, and (3) declaring that CPL 270.25 (1) is unconstitutional to the extent that it "either authorizes unconstitutional discrimination by criminal defendants and their attorneys in jury selection, or requires trial judges to enforce such discrimination and dismiss potential jurors who are so challenged.” (Emphasis added.)
The Attorney-General, on behalf of the named defendants, has moved to dismiss the instant complaint,[1] essentially on two grounds: one, that plaintiff lacks standing to bring this action, either in her own right or as a representative of prospective excluded jurors, and two, even if, arguendo, plaintiff is found to have standing, she has not demonstrated that the conduct complained of constitutes State action, in which case the alleged conduct would not be reviewable under either Federal or State constitutional provisions.
At the outset, and before turning to the various legal issues raised, the court would briefly touch on the factual underpinnings of the instant application. Plaintiff, in support of her-claim that her office has witnessed "persistent use of peremptory challenges by .criminal defendants and their attorneys along racial lines”, has submitted affirmations from several current or former Assistant District Attorneys in her office who attest to having witnessed defense counsel exercise what appeared to be race-based peremptories in a number of crimi *112 nal cases. Those cases specifically cited are (1) People v Bova (Kings County, indictment No. 3545/82 [defense counsel allegedly used 15 peremptory challenges to exclude 13 black and 2 Hispanic potential jurors, the result being an all-white jury]); (2) People v Mormondo (Kings County, indictment No. 3533/82 [9 of 11 black potential jurors challenged peremptorily by defense counsel; jury panel eventually selected consisted of 11 whites and 1 black]); (3) People v Wiggins (Kings County, indictment No. 2694/83 [defense attorneys peremptorily challenged 15 black potential jurors and challenged 4 remaining black potential jurors for cause, thereby excluding all 19 black potential jurors]); (4) People v Duncan (Kings County, indictment No. 4115/84 [defense counsel appeared to be excluding white potential jurors on trial of 2 black defendants]); (5) People v Vacchio (Kings County, indictment No. 117-85 [defense counsel peremptorily challenged 8 of 9 black potential jurors; jury selected consisted of 11 white jurors and 1 black juror (as well as 1 black alternate), after a 10th black juror was excused for cause]); and (6) People v Carter (Kings County, indictment No. 1093/86 [defense counsel exercised 14 of 15 peremptory challenges against potential white jurors, resulting in a jury of 11 blacks and 1 white]).
The Attorney-General, representing the named defendants in support of their motion to dismiss, disputes plaintiffs assertion that such a practice is "persistent” or "widespread”. Nonetheless, without conceding "the accuracy or truth of the allegations made by the District Attorney”, the record should reflect that it is defendants’ position that "for purposes of the instant motion to dismiss, the allegations in the complaint must be accepted as true”. Thus, at least insofar as the six Kings County cases specifically cited are concerned, the facts essentially are not in dispute for purposes of the immediate application.[2]
Another threshold argument is raised in support of defendants’ motion to dismiss. The Attorney-General points to the very recent CPLR article 78 proceeding brought in Matter of Ladone v Demakos (133 AD2d 435 [2d Dept 1987]), an outgrowth of the so-called "Howard Beach” case, where the attorneys for the named defendants were directed by the Trial Judge to respond to allegations that they were exercising *113 "race-based” peremptories to exclude black potential jurors. There, in dismissing the article 78 proceeding seeking to prohibit enforcement of the Trial Judge’s order, the Attorney-General correctly points out that the Second Department ruled that prohibition did not lie because another remedy was available to the defendants, namely, direct appeal. (And see companion case of People v Kern, 137 AD2d 862, where, in the context of an application seeking bail pending appeal, the Second Department pointed out that among the potential issues to be raised on appeal was one of "first impression”, namely, whether the trial court erred in requiring defense counsel to set forth nonracial, "neutral” reasons for the manner in which he exercised peremptory challenges.)
However, at the threshold, the case law recognizes significant differences between an article 78 proceeding in the nature of a writ of prohibition and an action, such as the instant one, for declaratory judgment. In so many words, the Court of Appeals has held that "declaratory relief is available in a wider range of circumstances than is prohibition.” (See, Matter of Morgenthau v Erlbaum, 59 NY2d 143, 148.) Unlike an article 78 proceeding, it is by now well settled that while a court may decline to entertain a declaratory judgment action if other remedies are available, "[t]he mere existence of other adequate remedies, however, does not require dismissal”. (See, Matter of Morgenthau v Erlbaum, supra,. at 148.) Moreover, " '[t]he remedy [of declaratory judgment] is available in cases "where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved.” ’ ” (See, Matter of Morgenthau v Erlbaum, supra, at 150, citing Dun & Bradstreet v City of New York, 276 NY 198, 206.)
This is precisely the situation here. Plaintiff seeks to test the constitutional validity of CPL 270.25 (1), to the extent that it authorizes defense counsel to make racially motivated peremptory challenges. No real questions of fact have been raised insofar as the six Kings County cases relied upon by plaintiff. Generally speaking, declaratory relief, involving a determination of the constitutionality of a statute, is usually deemed proper. (See, Matter of Morgenthau v Erlbaum, supra, at 150.) Moreover, without in any way seeking to characterize plaintiff’s allegations as to whether the exercise of "race-based” peremptories is "widespread”, suffice it to say that plaintiff has adequately demonstrated that the issue has already arisen in several other cases, that it is an issue poten *114 tially far-reaching in scope, and that it is likely to arise again, all factors which tend to favor entertaining the instant application. (See, Matter of Morgenthau v Erlbaum, supra, at 152.)[3]
Thus, the recent Second Department opinion in Matter of Ladone v Demakos (133 AD2d 435, supra), declining to entertain an article 78 proceeding, is clearly distinguishable; accordingly, plaintiffs application seeking relief in the form of a declaratory judgment action under the set of circumstances presented herein would appear to be at least procedurally proper. However, before this court can proceed to entertain the merits of plaintiffs application, yet another threshold question must be answered, namely, and aside from the nature or form of the remedy sought, does plaintiff have the requisite standing to bring on such an action? Here, two issues must be addressed, i.e., (1) does plaintiff have standing to sue as a representative of those prospective jurors who have been excluded as a result of the exercise of the allegedly race-based peremptories, or (2) does plaintiff have standing to sue in her own right? First, insofar as the question of plaintiff’s possible standing as a representative of a third party, i.e., excluded potential jurors, is concerned, this court recognizes that one major reason to grant standing to a party as a representative of a third party is the desire to overcome an otherwise "impenetrable barrier to any judicial scrutiny of legislative action,”. (See, Boryszewski v Brydges, 37 NY2d 361, 364; Matter of Daniel C, 99 AD2d 35 [2d Dept 1984].) In light of the opinion in Carter v Jury Commn. (396 US 320 [1970]), where the Supreme Court held that there was no bar to appellants, black citizens of Greene County, Alabama, who claimed they were being systematically excluded from jury service, seeking declaratory relief, it cannot be said that such an "impenetrable barrier” exists in the instant case. Thus, the court would deny plaintiff standing to sue as a representative of excluded potential jurors.
It appears, however, that plaintiff is on much firmer legal ground insofar as standing to bring suit in her own right is concerned. Beginning with the seminal case of Boryszewski v Brydges (supra), our Court of Appeals has adopted a far more "liberalized attitude toward recognition of standing to litigate”. (See, Matter of Morgenthau v Cooke, 56 NY2d 24, 30.) *115 " 'Only where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied’ (See, Matter of District Attorney of Suffolk County, 58 NY2d 436, 442.) Here, to this court’s knowledge, there is no such "clear legislative intent” to negate review. Moreover, in light of the expansive holdings in the recent appellate cases (see, Matter of Morgenthau v Cooke, supra, holding that the District Attorney of New York County was within the "zone of interest” and therefore had standing to challenge a plan for rotation of Judges promulgated by the Chief Administrator of the courts; see also, Boryszewski v Brydges, supra, granting petitioner taxpayers standing to challenge the constitutionality of certain legislative enactments), this court would find that plaintiff does in fact have standing in her own right and in her official capacity as the District Attorney of Kings County to bring the instant action.
Accordingly, then, the court will go on to address the merits of plaintiff’s application.
In Batson v Kentucky (476 US 79, 89 [1986]), the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor [from] challenging] potential jurors solely on account of their race”. However, in footnote 12 at page 89 thereat, the majority in Batson expressed "no views on whether the Constitution imposes any limit on the exercise of peremptory challenges by defense counsel.” This very issue, an issue not as yet addressed by any appellate court in its State (see, Matter of Ladone v Demakos, 133 AD2d 435, supra; and see, People v Kern, 137 AD2d 862, supra), is now squarely before this court.[4]
First and foremost, there can be little question that "[t]he *116 Fourteenth Amendment * * * 'erects no shield against merely private conduct, however discriminatory or wrongful.’ ” (See, Matter of Wilson, 59 NY2d 461, 476.) Or, to put it another way, the actions of the defendants named herein would only trigger Federal constitutional protections if their actions can be deemed to constitute "State action”. (See, SHAD Alliance v Smith Haven Mall, 66 NY2d 496, 499, 500.) As the SHAD court observed, "despite its outward simplicity as a concept, State action is in fact an elusive principle not reducible to ritualistic incantations or precise formalism (see, Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158, supra [citing Burton v Wilmington Parking Auth., 365 US 715, 722]; see also, Tribe, American Constitutional Law, op. cit., at 1148-1149). The factors to be considered in determining whether it has been shown include: 'the source of authority for the private action; whether the State is so entwined with the regulation of the private conduct as to constitute State activity; whether there is meaningful State participation in the activity; and whether there has been a delegation of what has traditionally been a State function to a private person (Melara v Kennedy, 541 F2d 802, 805). As the test is not simply State involvement, but rather significant State involvement, satisfaction of one of these criteria may not necessarily be determinative to a finding of State action’ (Sharrock v Dell Buick-Cadillac, supra, at p 158).” (See, SHAD Alliance v Smith Haven Mall, supra, at 505 [emphasis added].) In attempting to define the term "State action”, the United States Court, in Lugar v Edmonson Oil Co. (457 US 922), adopted a two-part test. The Lugar court *117 held that: "Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of 'fair attribution.’ First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible * * * Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.” (See, Lugar v Edmonson Oil Co., supra, at 937.) While recognizing that there is "no conclusive test” to ascertain whether or not State action is involved, the New York Court of Appeals has accepted, as a general standard, the "fair attribution” test promulgated in Lugar (supra). (See, Matter of Wilson, 59 NY2d 461, 476, supra.) In an attempt to further flesh out the parameters of the "fair attribution” standard, the Wilson court went on to point out the following critical distinction: "The State generally may not be held responsible for private discrimination solely on the basis that it permits the discrimination to occur (see Flagg Bros, v Brooks, 436 US 149, 164; Jackson v Metropolitan Edison Co., 419 US 345, 357, supra; Moose Lodge No. 107 v Irvis, 407 US 163, 176, supra; Evans v Abney, 396 US 435, supra). Nor is the State under an affirmative obligation to prevent purely private discrimination (see Reitman v Mulkey, 387 US 369, 376, 377, supra). Therefore, when the State regulates private dealings it may be responsible for private discrimination occurring in the regulated field only when enforcement of its regulation has the effect of compelling the private discrimination (see Flagg Bros, v Brooks, supra; Moose Lodge No. 107 v Irvis, supra; Shelley v Kraemer, 334 US 1, supra; cf. Adickes v Kress & Co., 398 US 144, 170).” (See, Matter of Wilson, supra, at 477 [emphasis added].) Or, as the United States Supreme Court earlier observed in Flagg Bros, v Brooks (436 US 149, 164), "[t]his Court * * * has never held that a State’s mere acquiescence in a private action converts that action into that of the State.” The Flagg court went on to point out the State is in no way responsible for a warehouseman’s proposed sale of goods pursuant to UCC 7-210, a decision which the latter statute "permits but does not compel”. (See, Flagg Bros, v Brooks, supra, at 165 [emphasis added].)
In this court’s view, it is on this very distinction, that is, the distinction between permitting and compelling, that the instant application turns. There can be little question that *118 CPL 270.25 permits but does not require or compel defense counsel to exercise peremptory challenges in any given case, much less require them to exercise their peremptory challenges in a racially motivated manner. (See, People v Foster, 100 AD2d 200, 205 [2d Dept 1984], mod on other grounds 64 NY2d 1144, cert denied 474 US 857.) That is to say, as the defendants correctly point out, that neither the Legislature nor the courts compel defense counsel to exercise any of their peremptory challenges in the first instance. It is the view of this court that the State cannot be held responsible for the conduct complained of merely because the Judges are required to grant the peremptory challenge once it is exercised. The State, through its Judges, cannot be said to be responsible for the decision of defense counsel to challenge a particular juror, just as the State, notwithstanding extensive State and Federal Medicaid regulations, was found not responsible for the decision of certain nursing homes to transfer or discharge particular patients. (See, Blum v Yaretsky, 457 US 991, 1005-1008.) True it is, of course, that the peremptory challenge must be granted once defense counsel chooses to exercise it. But the choice to exercise it or not to exercise it still ultimately resides with defense counsel.
Thus, while CPL 270.25 permits defense counsel to exercise peremptory challenges, neither the statute nor the Judge presiding over the criminal trial can be said to compel the exercise of a peremptory challenge.
The next question then is, under the two-pronged Lugar test, can defense counsel be said to be "State actors”? In light of Polk County v Dodson (454 US 312, 325) where the United States Supreme Court unequivocally held that "a public defender does not act under color of state law when performing a lawyer’s traditional functions as counsel to a[n indigent] defendant in a [state] criminal proceeding”, the answer is clearly no. Nor does plaintiff here allege that any conspiracy existed between the defendant Judges and defense counsel such that defense counsel could be said to be acting "under color of’ State law by virtue of "joint participation” in the challenged conduct. (See, Dennis v Sparks, 449 US 24.)
In sum, then, it is the opinion of this court that plaintiff has satisfied neither prong of the two-part Lugar test, and that she has therefore failed to demonstrate that the conduct in question amounts to "State action”. Absent this necessary element of "State action” then, plaintiff’s contention that CPL 270.25 is unconstitutional to the extent it permits defense *119 counsel to issue "race-based” peremptory challenges must be rejected.
Plaintiff raises one additional argument. It is plaintiff’s further contention that notwithstanding the relative merits of the "State action” question, that article I, § 11 of the NY Constitution, and specifically sentence 2 thereat, prohibits private persons, as well as "State actors”, from excluding potential jurors on the basis of race. Article I, § 11 of the NY Constitution provides:
"§ 11. [Equal protection of laws; discrimination in civil rights prohibited]
"No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No- person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.”
The first sentence of section 11, clearly an Equal Protection Clause, has been held to be "no broader in coverage than the Federal provision.” (See, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 360, n 6; Dorsey v Stuyvesant Town Corp., 299 NY 512, 530.) The bone of contention herein revolves around construction of the second sentence of article I, § 11. Plaintiff, at page 17 of her memorandum of law in opposition to defendants’ motion to dismiss, quotes from a passage of Dorsey (supra, at 531), wherein the Court of Appeals stated that sentence 2 of section 11 is "applicable to private persons and private corporations”. Drawing from that limited quotation, plaintiff then advances the argument that "the Constitution is violated, therefore, by private acts of discrimination touching upon the 'civil rights’ of another.” However, as plaintiff is well aware, the Court of Appeals in Dorsey went on to point out that the rights referred to in sentence 2 of article I, § 11 are "[o]bviously such rights [as] are * * * elsewhere declared.” (See, Dorsey v Stuyvesant Town Corp., supra, at 531.) That is, the Dorsey court concluded that the provision in question (sentence 2) was not self-executing; rather, the Dorsey court, referring back to the record of the 1938 New York State Constitutional Convention, pointed out (at 531) that "the civil rights protected by the clause in question were those already denominated as such in the Constitution itself, in the Civil Rights Law, or in other statutes”.. Plaintiff, apparently aware that sentence 2 does in *120 fact require "legislative implementation to be effective” (see, Dorsey v Stuyvesant Town Corp., supra, at 531), then seeks to base her argument on the wording of Civil Rights Law § 13. The latter section provides as follows: "No citizen of the state possessing all other qualifications which are or may be required or prescribed by law, shall be disqualified to serve as a grand or petit juror in any court of this state on account of race, creed, color, national origin or sex, and any person charged with any duty in the selection or summoning of jurors who shall exclude or fail to summon any citizen for any of the causes aforesaid shall, on conviction thereof, be deemed guilty of a misdemeanor and be fined not less than one hundred dollars nor more than five hundred dollars or imprisoned not less than thirty days, nor more than ninety days, or both such fine and imprisonment.” (Emphasis added.)
At the outset, it is apparent to this court that those cases which cite or otherwise refer to Civil Rights Law § 13 typically involve claims that a public official, usually a Commissioner of Jurors, engaged in systematic and intentional discrimination in the manner in which the entire panel of prospective jurors was selected. Such an application of this statute is fully understandable in view of the express language contained at Civil Rights Law § 13 referring to possible sanctions which could be imposed upon that "person charged with any duty in the selection or summoning of jurors”. (See, People v Dessaure, 299 NY 126; People v Attica Bros., 79 Misc 2d 492 [Sup Ct, Erie County 1974, King, J.]; Cabanis v Reich, 59 Misc 2d 821 [Sup Ct, Suffolk County 1969, Stanislaw, J.]; see also, Judiciary Law § 502 [d]; and see, CPL 270.10 [challenge to the panel]; see also, People v Parks, 41 NY2d 36.) No case, to this court’s knowledge, extends Civil Rights Law § 13 to the situation propounded by plaintiff herein. Moreover, examination of the annotations following McKinney’s Consolidated Laws of NY, Book 8, Civil Rights Law § 13 further reflect that this provision is closely tied to other statutes which also serve to prohibit "State action” denying citizens equal protection of the law. (See, 18 USC § 243, as cross-referenced following McKinney’s Cons Laws of NY, Book 8, Civil Rights Law § 13, at 39; and see in addition to cases cited above, Ex Parte Virginia, 100 US 339.)
Thus, in' closing, the court would make three points. First, even assuming, arguendo, that the second sentence of article I, § 11 of the NY Constitution may properly be construed separate and apart from the equal protection language of sentence *121 1 (but see, McKinney’s Cons Laws of NY, Book 1, Statutes § 97), the former provision is clearly not self-executing; and, to the extent plaintiff argues that sentence 2 of article I, § 11 must be read in conjunction with Civil Rights Law § 13 to be effective, the latter statute, as noted above, has by and large been cited in cases dealing with some form of "State action”. Secondly, construing the language of article I, § 11 of the NY Constitution as a whole, which is the proper mode of construction (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 97), there is no doubt that the State Equal Protection Clause contained at article I, § 11 has been found "no broader in coverage than the Federal provision”, and that "State action” is required before the State Equal Protection Clause may be triggered. (See, Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 360, n 6, supra; Matter of Esler v Walters, 56 NY2d 306.) Third, and finally, as recently as 1985, in SHAD Alliance v Smith Haven Mall (66 NY2d 496, 505, supra), a majority of our Court of Appeals, per Titone, J., opined that "[abrogation of a State action requirement * * * would have broad and mischievous consequences”. The SHAD court then went on to hold (at 505) that "[a] disciplined perception of the proper role of the judiciary, and, more specifically, discernment of the reach of the mandates of our State Constitution, precludes us from casting aside so fundamental a concept as State action”. Bearing these precepts in mind, the court hereby grants defendants’ motion to dismiss the instant complaint; plaintiffs request for a judgment declaring (1) that both the United States and New York State Constitutions prohibit criminal defendants and their attorneys from using race-based peremptory challenges, (2) that CPL 270.25 (1) is unconstitutional to the extent that it authorizes such race-based peremptories, and (3) declaring the Justices named as defendants, when presiding at criminal trials, may not enforce peremptory challenges, without further inquiry, upon a prima facie showing that peremptory challenges are being exercised by defense counsel on such a basis, is hereby denied in all respects.

. The court has also received amicus briefs from the Kings County Bar Association, the Brooklyn Bar Association, and the Criminal Defense Division of the Legal Aid Society in support of defendants’ motion to dismiss.

. Given the far-reaching nature of the issue, and the likelihood of its recurrence, the court would not deny plaintiff standing on the basis that at least 4 of the 6 criminal cases cited by plaintiff resulted in convictions.

. Finally, the trials in all six of the cases cited by plaintiff having long since been completed, it is self-evident that entertaining the instant application for declaratory relief will in no way impede or delay the trial of those criminal cases. (See, Matter of Morgenthau v Erlbaum, 59 NY2d 143, 151.)

. It is interesting to note that in his 1986 Supplementary Practice Commentary to CPL 270.25, Peter Preiser offered the comment that "although the Supreme Court expressly declined to express a view on whether the Constitution imposes any limit on the exercise of peremptory challenges by defense counsel (n. 12), and although constitutional arguments can be constructed to reach that issue, the conclusion that Batson rule will apply to defense challenges does not flow naturally from the Batson opinion.” (McKinney’s Cons Laws of NY, Book 11 A, 1988 Pocket Part, at 186.)
The Legal Aid Society, in their amicus memorandum of law in opposition, cite to, and distinguish a pre-Batson decision entitled Booker v Jabe (775 F2d 762 [1985]), where the Sixth Circuit Court of Appeals applied a Sixth Amendment analysis (right to an impartial jury as opposed to an equal protection analysis under the Fourteenth Amend) and held that the Sixth Amendment permits neither prosecutor nor defense counsel to exercise peremptory challenges on the basis of race, notwithstanding the fact that the Sixth Amendment, by its very terms, protects the rights of " ’the
*116 accused’ ”. (See, Booker v Jabe, supra, at 772.) Following vacatur and remand from the Supreme Court in light of Batson and other decisions, the Sixth Circuit in Booker v Jabe (801 F2d 871 [1986]), without further substantive comment, reinstated their previous opinion. (And see, cert denied sub nom. Michigan v Booker, 478 US 1001 [1987].)
This court is also aware that the Supreme Courts of three States, Florida, Massachusetts and California, in pre-Batson decisions, have held that the State, as well as the defense, apparently on the theory of a right to an impartial jury under the Sixth Amendment, may challenge the allegedly improper use of peremptories. (See, State v Neil, 457 So 2d 48Í [Fla 1984]; Commonwealth v Soares, 377 Mass 461, 387 NE2d 499 [1979]; People v Wheeler, 22 Cal 3d 258, 583 P2d 748 [1978].) However, it should be pointed out that in Batson (476 US 79, 84-85, n 4, supra), the Supreme Court, fully cognizant of the latter State court decisions, noted that petitioner therein had raised both Fourteenth Amendment and Sixth Amendment arguments. Significantly, the high court then decided that the State was correct that "resolution of petitioner’s claim properly-turns on application of equal protection principles and [we] express no view on the merits of any of petitioner’s Sixth Amendment arguments.” (Supra, at 85.)